**SO ORDERED.**

**SIGNED this 28 day of May, 2014.**

_____
**Randy D. Doub**
**United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| IN RE: | |
| TANGLEWOOD FARMS, INC., OF ELIZABETH CITY, | CHAPTER 7<br>CASE NUMBER: 10-06719-8-RDD |
| DEBTOR | |
| JAMES B. ANGELL, TRUSTEE, | ADVERSARY PROCEEDING<br>NUMBER: 12-00191-8-RDD |
| PLAINTIFF, | |
| v. | |
| CRAFT AIR SERVICES, LLC, | |
| DEFENDANT. | |

## ORDER

Pending before the Court is the Complaint to Avoid and Recover Fraudulent Transfers Under 11 U.S.C. 544, 548, 550, and 551 (the "Complaint") filed by James B. Angell, Chapter 7 Trustee (the "Trustee") on August 19, 2012 and the Answer to Complaint (the "Answer") filed by John G. Rhyne on behalf of Craft Air Services, LLC (the "Craft Air") on October 16, 2012. The Court

conducted a trial in Greenville, North Carolina to consider the Complaint and the Answer on May 3, 2014.

## STATEMENT OF THE FACTS

On August 20, 2010, Tanglewood Farms, Inc. of Elizabeth City (the "Debtor") filed a petition for relief under chapter 11 of the Bankruptcy Code. On July 12, 2011, the Debtor's case was converted to one under chapter 7 and the chapter 7 trustee (the "Trustee") was appointed. The Debtor owned and operated a granary facility in Pasquotank County, North Carolina. James Howard Winslow ("Mr. Winslow") is the 100% owner and principal of the Debtor. Mr. Winslow also operated a farming business ("Winslow Farms") for which he grew grain on land which he either personally owned or leased. Mr. Winslow oversaw the Debtor's purchase, sale and storage of corn, wheat and soybeans (collectively "grain") and facilitated grain exchange between the Debtor, Winslow Farms, grain suppliers and purchasers. The Debtor purchased grain from Winslow Farms and stored grain Winslow Farms sold to third parties at its granary facility. The Debtor did not own or rent any farmland in 2009. In 2009, Mr. Winslow sold the vast majority, if not all, of his crops to the Debtor. Mr. Winslow and his wife, Billie Reid Winslow (collectively the "Winlsows"), filed a joint voluntary petition for relief under chapter 11 of the Bankruptcy Code on August 23, 2010[1].

Craft Air provides crop-dusting services to agriculture operations in Eastern North Carolina. For Approximately ten years, Craft Air provided crop-dusting services for land owned by Mr. Winslow. From the onset of that business relationship, Craft Air billed both Mr. Winslow and the Debtor, for the crop-dusting services. Craft Air, its employees, or its owners never purchased the

---

[1] The relationship between the Debtor, Mr. Winslow and his personal farming operation was so intertwined and close that many, including suppliers and purchasers, identified them as one entity. Despite this tripartite relationship, this court denied the motion to consolidate the Winslows' individual case with the Debtor's case on February 18, 2011. See Tanglewood Farms, 2011 WL 672060, at *1–2 (Bankr. E.D.N.C. Feb. 18, 2011).

chemicals used for spraying. The chemicals used to spray the fields were either picked up by Craft Air at the Debtor's granary location or the chemicals were delivered to the airport. The boxes containing the chemicals were labeled "Tanglewood Farms" or "TWF." Craft Air did not spray crops that were being stored at the Granary. During the ten year period, the vast majority of the payments for the crop-dusting services came from Mr. Winslow in his individual capacity. (Mr. Winslow issued over 30 checks totaling $985,827.39 to Craft Air for the Services, Exhibit 4).

When Craft Air Services, LLC was first contacted by Mr. Jimmy Winslow about providing crop dusting services, Craft Air Services, LLC set up the account in the name of:

> Tanglewood Farms
> Jimmy Winslow
> 1268 U. S. 17 South
> Elizabeth City, NC 27909

A total of twenty nine statements for crop dusting services were introduced into evidence ranging in dates from July 1, 2006 to June 10, 2009 (Exhibit 9). Mr. Craig Craft, owner of Craft Air, testified that he contacted Mr. Winslow about how the account should be designated. Mr. Craft testified that Mr. Winslow approved the statements being billed and sent as set forth above. Mr. Winslow never objected to the statements as far as the amount billed or to whom the statements were addressed. Mr. Craft testified that he had no knowledge there was a corporation operating as Tanglewood Farms Inc. of Elizabeth City, and that Mr. Winslow always identified himself as Tanglewood. Mr. Winslow's farm trucks had "Tanglewood" written on the doors. Mr. Winslow testified about his identifying mark for Tanglewood being the word Tanglewood with a picture of a bear and a deer on either end of the word "Tanglewood." When Mr. Winslow referred to the farms, he always referred to them as the Tanglewood Farms. Mr. Winslow testified that "I am Tanglewood Farms" and that since he owned the corporation, "the corporation and him were all one in the same."

In his complaint the Trustee seeks avoidance and recovery of two transfers totaling $60,000 made by the Debtor, to Craft Air within the two years prior to the date of the petition, August 20, 2010. The first payment was made on August 26, 2009, by a First Citizens Bank and Trust Company cashiers check made payable to the Debtor and Craft Air in the amount of $50,000 (Exhibit 1). The second payment was made December 18, 2009, written on a check from a Wachovia Bank checking account in the name of the Debtor in the amount of $10,000 made payable to Craft Air. (Exhibit 2). The Trustee contends that these payments were made by the debtor to Craft Air for services performed solely for James H. Winslow, the owner of the Debtor and therefore, the Debtor received less than reasonably equivalent value.

In Craft Air's Answer it contends that the Debtor and Jimmy and/or Billie Winslow were so closely connected that any payment made by the debtor on behalf of an obligation owed by Jimmy and/or Billie Winslow benefitted the debtor. Accordingly, Craft Air argues that the Debtor received reasonably equivalent value in exchange for the transfer.

Both parties filed motions for summary judgment. A hearing was held before the Honorable A. Thomas Small on November 20, 2013. In the order denying the motions for summary judgment, Judge Small found that it was "uncontroverted that the debtor made payments of $60,000 to the defendant. It is also undisputed that the spraying took place on Mr. Winslow's personal farm land. What is disputed, however, is whether the obligation was a joint obligation of Mr. Winslow and Tanglewood Farms. That factual dispute is material to the determination of whether Tanglewood received reasonably equivalent value when it made the payments and is a question for trial." *Angell v. Craft Air Service, LLC,* AP No. 12-00191-8-ATS (Bankr. E.D.N.C. Nov. 26, 2013).

Therefore, the only issue for trial is whether the payment for the services rendered by Craft Air were the sole responsibility of Mr. Jimmy Winslow, or whether Mr. Winslow and the Debtor

were jointly liable. If the Debtor and Mr. Winslow are jointly liable, then the debtor did receive reasonably equivalent value for the services delivered by Craft Air.

## DISCUSSION

A trustee may avoid as a fraudulent transfer, pursuant to 11 U.S.C. § 548:

(a)(1) any transfer...of an interest of the debtor in property or any obligation...incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily –

(B) (i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

  (ii)  (I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation; (II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital;
(III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or
(IV) made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.

11 U.S.C. § 548 (a)(1)(B).

To avoid payments as constructively fraudulent, the trustee must prove by a preponderance of the evidence, that the debtor did not receive reasonably equivalent value in exchange for the challenged payments and the debtor was insolvent. *Angell v. Endcom*, 487 B.R. 705, 709 (Bankr. E.D.N.C. Feb. 26, 2013) (citing 11 U.S.C. § 548(a)(1)(B)). When evaluating reasonably equivalent value "[t]he focus is on the consideration received by the debtor, not on the value given by the transferee. The purpose of fraudulent transfer law is the preservation of the debtor's estate for the benefit of its unsecured creditors." *Id.* (citing *Harman v. First Am. Bank of Md.* (*In re Jeffery Bigelow Design Grp., Inc.*), 956 F.2d 479 (4th Cir.1992). A large or significant disparity between what the debtor gave and what it received in exchange typically precludes a finding that the debtor

received reasonably equivalent value. *Id.* (citing 5 Collier on Bankruptcy ¶ 548.05[2][a], [b] (Alan N. Resnick & Henry J. Sommer eds., 16th ed. rev. 2012) ("Courts generally find a lack of reasonably equivalent value when the transfer or obligations benefits a third party .... hold[ing] that such transfers provide no value to the debtor."). "Although reasonably equivalent value may be the satisfaction of the antecedent debt or obligation of the debtor, it is not the satisfaction or guarantee of the debt of another." *Id.* at 710 (citing *Tourtellot v. Huntington Nat'l Bank, (In re Renegade Holdings, Inc.*), 457 B.R. 441, 444 (Bankr.M.D.N.C.2011)*; Dietz v. St. Edwards Catholic Church* (*In re Bargfrede*), 117 F.3d 1078, 1080 (8th Cir.1997) (per curium)*; Leonard v. Norman Vinisky Residuary Tr.* (In re Jolly's, Inc.), 188 B.R. 832, 842 (Bankr.D.Minn.1995)).

After hearing the evidence and the arguments of counsel, the Court finds that the Debtor did receive a reasonably equivalent value for the payments of $60,000.00 in that both the Debtor and Mr. Winslow were both liable on the account. As the court has determined that the Debtor received a reasonably equivalent value, the court need not consider the issue of insolvency.

Under North Carolina law, the twenty nine statements, sent to Mr. Winslow and the Debtor constituted an account stated. In order to establish an account stated, the claimant must show: "(1) a calculation of the balance due; (2) submission of a statement to [the party to be charged]; (3) acknowledgment of the correctness of that statement by [the party to be charged]; and (4) a promise, express or implied, by [the party charged] to pay the balance due." *Mast, Mast, Johnson, Wells & Trimyer, P.A. v. Lane*, 745 S.E.2d 56, 58 (2013) (quoting *Carroll v. Indues, Inc.* 296 N.C.205, 250 S.E.2d 60(1978)). "The jury may infer from the retention [of a statement of account] without objection of an account rendered for a reasonable time by the person receiving a statement of account that the person receiving the statement has agreed that the account is correct." *Mahafey v.*

*Sodero,* 38 N.C.App 349, 349, 247 S.E.2d 772, 773 (1978) (citation omitted). "By receiving, paying on, and not disputing, during the nearly two years that services were admittedly rendered, any of the itemized statements received-all of which showed defendant's running balance-the correctness thereof was impliedly admitted; and no excuse, mistake or fraud being either shown or suggested, defendant's account with the plaintiff became an account stated by operation of law." *VanLandingham v. Northeastern Motors, Inc.,* 63 N.C. App. 778, 306 S. E. 2d 169 (1983).

The evidence clearly shows Mr. Winslow approved of the account statements being sent to both himself and the Debtor. Neither Mr. Winslow nor the Debtor objected to any of the 29 statements sent between 2006 and 2009. Mr. Winslow held himself out as "Tanglewood Farms." Without question, an account stated was created by operation of law making both Mr. Winslow and the Debtor liable on the Craft Air Services, LLC accounts.

## **CONCLUSION**

Therefore, the Trustee shall have and recover nothing of Craft Air Services, LLC. Judgment is entered in favor of Craft Air Services, LLC.

**SO ORDERED.**

**END OF DOCUMENT**